IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHAD INGALLS, | ) | CIVIL NO. 11-00244 JMS/RLP |
| | ) | CIVIL NO. 11-00488 JMS/KSC |
| Plaintiff, | ) | |
| | ) | ORDER (1) DENYING |
| vs. | ) | GOVERNMENT EMPLOYEES |
| | ) | INSURANCE COMPANY'S |
| GOVERNMENT EMPLOYEES | ) | MOTION FOR PARTIAL |
| INSURANCE COMPANY, JOHN | ) | SUMMARY JUDGMENT, DOC. |
| DOES 1-50, et al., | ) | NO. 43; AND (2) DENYING CHAD |
| | ) | INGALLS' AND PEARL INGALLS' |
| Defendants. | ) | MOTION FOR SUMMARY |
| _____ | ) | JUDGMENT, DECLARATORY |
| GEICO (GOVERNMENT | ) | JUDGMENT AND OTHER RELIEF, |
| EMPLOYEES INSURANCE | ) | DOC. NO. 47 |
| COMPANY), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHAD J. INGALLS and PEARL | ) | |
| INGALLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER (1) DENYING GOVERNMENT EMPLOYEES INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DOC. NO. 43; AND (2) DENYING CHAD INGALLS' AND PEARL INGALLS' MOTION FOR SUMMARY JUDGMENT, DECLARATORY JUDGMENT AND OTHER RELIEF, DOC. NO. 47**

## I.  INTRODUCTION

On January 12, 2009, Plaintiff Chad Ingalls, who was in the midst of

moving his household from California to Hawaii, was driving a rented vehicle on Oahu when he was rear-ended by Jung Yun Song ("Song"). Chad Ingalls suffered various injuries and subsequently sought uninsured/underinsured motorist ("UM/UIM") benefits under his insurance policy from Government Employees Insurance Company ("GEICO"). GEICO has refused to make any payments under the policy, and the parties dispute whether his claim is governed by his California policy or the Hawaii policy GEICO issued after the accident.

According to Chad and Pearl Ingalls (the "Ingalls"), if the Hawaii policy applies, then they are entitled to "stack" the UM/UIM coverage by the number of vehicles insured under the policy. Thus, although the Hawaii policy provides UM/UIM coverage in the amount of $100,000 per person, this policy may provide a total of $200,000 in benefits because the policy covers two vehicles. In comparison, GEICO asserts that under the California policy, the Ingalls cannot stack the UM/UIM coverage and the amount that they would otherwise be entitled to under the policy ($100,000), must be offset by what they received from Song ($100,000) such that they are not entitled to any benefits.

Currently before the court are (1) the Ingalls' Motion for Partial Summary Judgment; and (2) GEICO's Motion for Partial Summary Judgment. Each party asserts that they are entitled to summary judgment regarding which

policy applies and their interpretation of that policy. Based on the following, the court finds that genuine issues of material fact exist regarding which policy applies and therefore DENIES both parties' Motions for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

#### 1. The Ingalls' Automobile Insurance With GEICO

Chad Ingalls first obtained automobile insurance with GEICO in 1992 while he was a Hawaii resident. Doc. No. 48, Ingalls' Concise Statement of Facts ("CSF") ¶ 1.[1] Chad Ingalls added his wife Pearl Ingalls to the policy in 1996, and maintained coverage with GEICO during their moves within Hawaii, multiple moves between Hawaii and Arizona, a move from Arizona to California, and a move from California to Hawaii. *See* Doc. No. 48-10, Ingalls Ex. 7 at 22, 23, 28, 41.

Chad Ingalls always notified GEICO of his moves in advance via telephone (a total of twelve moves between 2000 and 2010, *see* Doc. No. 44-1, Langley Decl. ¶ 10(c)), and he expected GEICO to make sure that his coverage was effective without delay when he moved from one state to another. Doc. No. 48, Ingalls CSF ¶¶ 25-26, 34; Doc. No. 48-2, Ingalls Decl. ¶ 32. GEICO never

---

[1] Where the parties do not dispute a particular fact, the court cites directly to the relevant CSF. Further, because the Ingalls did not number their CSF, the court counts each fact in order.

required Chad Ingalls to provide any written change of residence notifications, Doc. No. 48-2, Ingalls Decl. ¶ 32, and all address changes were reported via telephone. Doc. No. 48, Ingalls CSF ¶ 34. Although each move resulted in different insurance coverage, premiums, and terms and conditions,[2] Doc. No. 44-15, Akin Decl. ¶ 5, Chad Ingalls' policy number changed only twice,[3] and there was never a cancellation of coverage. Doc. No. 48, Ingalls CSF ¶ 23; *see also* Doc. No. 48-2, Ingalls Decl. ¶ 32. Ingalls' GEICO coverage was continuous during the course of these moves and throughout these years. Doc. No. 44-1, Langley Decl. ¶ 10(a).

### 2. *GEICO's Procedures for Changing a Policy*

GEICO's internal procedure regarding a state-to-state transition requires a cancellation of the prior policy and issuance of a new policy in what it refers to as a "Cancel/Rewrite." Doc. No. 44-1, Langley Decl. ¶ 5. According to Linda Langley, the Sales and Customer Service Manager at GEICO in Hawaii, a

---

[2] The parties dispute whether each move resulted in a different policy, as opposed to a modification of the original policy. *See* Doc. No. 44, GEICO CSF ¶ 7; Doc. No. 66, Ingalls' Opp'n to GEICO's CSF ¶ 7. At least for his moves to California and Hawaii, the Ingalls were issued new policies for each move. Ultimately, however, whether the Ingalls were issued a new contract with each move or each new policy can be viewed as a modification of the previous policy is an issue of semantics that the court need not resolve to determine the Motions for Summary Judgment. Regardless of how the court views each policy, it is undisputed that Chad Ingalls had a long business relationship with GEICO.

[3] The policy number changed once in 1999 when the policy was moved to a preferred risk company, and in 2004 when GEICO added digits to the end of the policy number for internal reasons. Doc. No. 48, Ingalls CSF ¶¶ 23-24.

customer must provide the zip code for where the vehicle will be garaged for rating purposes such that a policy cannot be issued until garaging information is provided. *Id.* ¶ 6.[4]

Langley asserts that the first step an insured takes to change the policy to another state is to contact GEICO via telephone and provide the new garaging information. *Id.* ¶ 7. When an insured calls GEICO, such call is generally noted on a Policy Log if the call is simply an inquiry relating to policy change, or on a 'Transaction Summary" if a policy change or transaction actually takes place.[5] *Id.* Langley asserts that if the insured calls within thirty days of a move (and has the garaging information), GEICO's procedure is to immediately process, issue, and mail a new policy with a future effective date of the move, and that such call would be evidenced on the Transaction Summary as a "Cancel/Rewrite." *Id.* ¶ 8. In comparison, if an insured calls more than thirty days before a move, GEICO's policy is to advise the insured to call within thirty days of the move. *Id.* ¶ 9. According to Langley, the Policy Log should indicate that the insured needs to follow up with GEICO when they are within thirty days of their move to

_____

[4] Douglas Akin, GEICO's insurance expert, appears to contradict Langley, by asserting that a policy can be issued only after both a local mailing address and the location where the vehicle will be garaged are provided. *See* Doc. No. 55-5, Ingalls Ex. 19 at 1.

[5] Langley conceded, however, that not every policy communication is logged on the Policy Log. Doc. No. 48-10, Ingalls Ex. 7 at 32.

"Cancel/Rewrite" the policy. *Id.*

Langley asserts that to ensure that GEICO representatives handle calls uniformly, GEICO utilizes "call maps," which diagramatically direct a service representative through a telephone transaction. *Id.* ¶ 13. These call maps are not entirely in sync with Langley's assertions regarding GEICO's policies for when a policy can be changed between states, and contain an internal inconsistency regarding when a change may be made. Specifically, the "Change of Address" call map first asks the question of whether the customer has physically moved. If the answer is "no," then the call map provides that the representative may perform an address correction only. *See* Doc. No. 44-4, Langley Decl. Ex. C. This result conflicts with Langley's assertions that GEICO will change a policy within thirty days of a move. Then, despite providing that an insured cannot change a policy if he has not yet moved, the call map also provides that if the caller answers that he has already moved, the representative may change the policy if the customer (1) has already moved *or the move is within thirty days* (even though the caller, according to the map, has already asserted that he has moved), and/or (2) can receive mail at the new address. *Id.* The "Change of Address Call Map" also does not make clear whether the insured must provide a garaging address as a prerequisite to changing the policy. *Id.*

6

Despite these ambiguities in the "Change of Address Call Map," an outline for insureds moving to Hawaii titled "State to State Moves Canx/Rewrite" requires the representative to gather certain information to calculate the premium for the new policy, including the "rated location for the vehicle(s)." *Id.* The outline further provides that the representative should provide advice regarding state-to-state coverage differences. *Id.* The outline does not, however, give any specific guidance regarding insurance issues and/or coverage specific to Hawaii law.[6] *Id.* According to this outline, at the end of the phone call, the representative will, among other things, provide the insured the new premium and summarize the effective dates and new payment due dates. *Id.*

---

[6] For example, Hawaii Revised States ("HRS") § 431:10C-301(d), regarding "required motor vehicle policy coverage" provides:

> An insurer shall offer the insured the opportunity to purchase uninsured motorist coverage and underinsured motorist coverage by offering the following options with each motor vehicle insurance policy:
>> (1) The option to stack uninsured motorist coverage and underinsured motorist coverage; and
>> (2) The option to select uninsured motorist coverage and underinsured motorist coverage, whichever is applicable, up to but not greater than the bodily injury liability coverage limits in the insured's policy.
> These offers are to be made when a motor vehicle insurance policy is first applied for or issued. For any existing policies, an insurer shall offer such coverage at the first renewal after January 1, 1993. Once an insured has been provided the opportunity to purchase or reject the coverages in writing under the options, no further offer is required to be included with any renewal or replacement policy issued to the insured. . . .

### 3. *The Ingalls' Move to California and the California Policy*

In June 2008, the Ingalls moved from Arizona to Blythe, California (their first and only move to California). Doc. No. 48-9, Ingalls Ex. 6 at 33, 83. As was his practice, Chad Ingalls notified GEICO of this move, resulting in GEICO recording their mailing and rated address as of June 6, 2008 as 460 North 8th Street, Blythe, California 92225-1811. Doc. No. 44-1, Langley Decl. ¶ 10(e). Thereafter, premiums for the Ingalls' insured vehicles (a 2008 Honda Civic and a 2005 Lincoln Navigator) were based on California law. Doc. No. 44-1, Langley Decl. ¶ 10(e).

The Ingalls' California policy provided for UM/UIM coverage, with limits of $100,000 per person and $300,000 per occurrence. Doc. No. 69-1, at 0000002.[7] The California policy, in its amendments, also includes a provision offsetting GEICO's liability for underinsured motorist coverage by the amount

---

[7] Despite also submitting the California policy (although without any of the amendments), the Ingalls objected to GEICO's submission of portions of the California policy as lacking foundation. In response, GEICO requests that the court take judicial notice of a certified copy of the entire policy (including declarations and amendments), which GEICO had previously submitted in support of a Motion for Summary Judgment before the Hawaii state court. *See* Doc. No. 69. GEICO fails to explain why the court may take judicial notice of the California policy -- the fact that it was previously submitted in support of a motion does not make it subject to judicial notice. The parties do not, however, appear to dispute that the California policy, attached at Doc. No. 69-1, was the Ingalls' policy. Further, the court's reliance on the policy, submitted as Doc. No. 69-1, does not change the outcome of the Motions. In any future Motions for Summary Judgment, however, the parties are reminded to provide a proper foundation for their exhibits.

paid by any person liable for the injury:

> REIMBURSEMENT AGREEMENT AND OFFSET
> PROVISION.  OUR RIGHT TO RECOVER
> PAYMENT.
> . . . If an award or judgment against, or settlement with,
> any party that the *insured* claimed was responsible for the
> *bodily injury* has been concluded, then the amounts we
> owe under this coverage shall be reduced by the amount
> of that award, judgment, or settlement.

*Id.* at 0000009.  Finally, another amendment to the policy includes a governing law

provision,[8] providing that "[t]he policy and any amendment(s) and endorsement(s)

are to be interpreted pursuant to the laws of the state of California."  *Id.* at

0000011.

The Ingalls renewed this policy on November 1, 2009, with coverage

running from December 6, 2008 through June 6, 2009.  Doc. No. 44-1, Langley

Decl. ¶ 10(f).  An invoice was sent to the Ingalls' California address in December

2009, *see id.* ¶ 10(g); Doc. No. 44-3, Langley Decl. Ex. B, and the Ingalls paid the

amount via Auto Pay on December 31, 2008.  Doc. No. 55-1, Chad Ingalls Suppl.

Decl. ¶ 7.

///

///

---

[8] To prevent any confusion between this provision in the California policy and the more general choice-of-law principles discussed below, the court refers to this provision as a "governing law provision" as opposed to a "choice-of-law provision."

### 4. The Ingalls' Move From California to Hawaii

The Ingalls' move to California was ultimately short-lived -- by December 2008, the Ingalls were planning to return to Hawaii by early January 2009.[9] *See* Doc. No. 48, Ingalls CSF ¶ 9.

To that end, in mid-to-late December 2008, Chad Ingalls contacted GEICO via telephone to advise of their move to Hawaii. *Id.* ¶¶ 10, 11, 26. In his Declaration, Chad Ingalls asserts:

> As part of the process of moving to Hawaii and changing [my] residency, in late December 2008, I contacted GEICO to make sure of coverage on our vehicles during shipping and to notify them of the upcoming move. I was assured that the cars were covered during shipping. During that conversation, I notified GEICO of my family's impending move to Hawaii on or about January 9, 2009 about two to three weeks before it happened. At that time, I did not have an address for where my family and I would be staying in Hawaii after the move. I was hoping that I would find a place or at least a P.O. Box to receive mail so we would not have to stay with my parents. I advised GEICO in December 2008 that I was moving back to Hawaii and that our cars would be located in Hawaii (once again) for the indefinite future starting January 9, 2009, however I was not sure where our family would be living.

Doc. No. 44-6, Tisdale Decl. Ex. 1, Ingalls Decl. ¶ 7. In his Supplemental Declaration, however, Chad Ingalls explains that whenever a physical Hawaii

---

[9] As a result, Chad Ingalls never obtained a California driver's license and did not register his cars in California. Doc. No. 48-2, Chad Ingalls Decl. ¶ 13.

address was required for something (including in December 2008 and for many years before), he would use his parents' address on Oahu, which he had authority to use. Doc. No. 55-1, Chad Ingalls Suppl. Decl. ¶¶ 2-3.[10] He further testified during his deposition that at the time of his call to GEICO he knew that they were going to be staying with his parents, and provided his parents' address. Doc. No. 48-9, Ingalls Ex. 6 at 44, 50-51, 58-59. Finally, although he could not specifically recall what the GEICO representative told him, Chad Ingalls asserts that GEICO confirmed that the vehicles would be covered during transit and that he notified GEICO that he was moving back to Hawaii. *Id.* at 56-58.

GEICO does not have a record of a call from Chad Ingalls regarding any request to change the policy from California to Hawaii in either its Transaction Summary or Policy Log. Rather, GEICO's records show that it was not until January 14, 2009 that Chad Ingalls changed the mailing address for his policy to

---

[10] GEICO objects to Chad Ingalls' statement in his Supplemental Declaration that he used his parents' address as a "default permanent address in Hawaii" as (1) lacking foundation because there is no admissible evidence that he had a conversation with GEICO in December 2008, (2) inconsistent with his prior declaration, (3) a misrepresentation given that he previously asserted that he did not have a Hawaii address for his family in December 2008, and (4) assuming facts not in evidence. *See* Doc. No. 58, GEICO Objs. 1-2. The court OVERRULES these objections. Chad Ingalls' assertions that he spoke with GEICO in December 2008 are sufficient to create a genuine issue of material fact that such conversation occurred. Further, his Supplemental Declaration is not directly contradictory to his initial Declaration such that GEICO has failed to establish that the inconsistency is "clear and unambiguous" to justify striking this statement. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). Finally, the statement does not assume facts not in evidence, but rather is based on his personal knowledge.

P.O. Box 700301, Kapolei, Hawaii 96709-0301. Doc. No. 44-1, Langley Decl. ¶ 10(c), (f). At that time, the rated location for his policy did not change, meaning that the Ingalls' California address still applied. *Id.* Further, it was not until January 22, 2009 that GEICO used a "Cancel/Rewrite" to change the rated address to Chad Ingalls' parents' address of 92-1364 Hunekai Street, Kapolei, Hawaii 96707-1513 (an address Chad Ingalls had previously provided GEICO for his December 2005 move from Arizona to Hawaii). *Id.*; Doc. No. 44-13, Tisdale Decl. Ex. H.

By the time his December 2008 conversation with GEICO had ended, Chad Ingalls believed that he had moved his policy back to Hawaii effective on or about January 9, 2009. Doc. No. 48, Ingalls CSF ¶ 11. Specifically, Chad Ingalls believed that he had provided all of the information requested or required by GEICO to move his policy to Hawaii, and he was never told that the policy could not be changed until a Hawaii address was provided. Doc. No. 55-1, Chad Ingalls Suppl. Decl. ¶ 4.[11] As far as Chad Ingalls knew, there were no outstanding issues

---

[11] Again, GEICO objects to these assertions in Chad Ingalls' Supplemental Declaration for lack of foundation, as hearsay, as a prior inconsistent statement and/or factual misrepresentation, and assuming facts not in evidence. Doc. No. 58, Obj. 3-4. The court OVERRULES these objections for the same reasons explained above for GEICO's other objections. Further, Chad Ingalls' assertions regarding what a GEICO representative told him are statements of a party opponent and not hearsay. Fed. R. Evid. 801(d)(2)(D).

To the extent GEICO objects to additional statements in Chad Ingalls' Supplemental Declaration to which the court cites below, such objections are overruled for these same reasons.

that needed to be addressed and his understanding was that the policy would be moved effective January 9, 2009.[12] *Id.* ¶¶ 4, 6 (stating that when he called GEICO in December 2008, "I provided such information and took such steps as the GEICO employee requested in order to move my policy").

### 5. *Events in Hawaii*

As part of their move, the Ingalls took their two vehicles to shipping companies on January 7 and 8, 2009 to have them shipped to Hawaii. Doc. Nos. 48-14, -15, Ingalls Exs. 11-12. On January 9, 2009, the Ingalls returned to Hawaii and became permanent residents. Doc. No. 48, Ingalls CSF ¶ 14.

On January 12, 2009, Chad Ingalls was driving a Hawaii rental car in Kapolei, Hawaii when he was rear-ended by Song. *Id.* ¶¶ 18-19. At the time of the accident, Chad Ingalls had a Hawaii driver's license, and Song likewise was a Hawaii resident with a Hawaii driver's license and driving a car licensed and garaged in Hawaii. Doc. No. 48-4, Ingalls Ex. 1; Doc. No. 48, Ingalls CSF ¶¶ 19-

---

[12] GEICO's expert, Douglas Akin, asserts that "there is no evidence that the INGALLS informed GEICO of the specific coverage that he desired; and therefore, the UM/UIM policy limits remained the same without the inclusion of 'stacking' as it was *not* available under the INGALLS' current and effective *California* Form Policy, which precludes 'stacking' of benefits." Doc. No. 44-15, Akin Decl. ¶ 13. He further opines that based on his review of the documents in this action, Chad Ingalls failed to inform GEICO that he wanted to obtain a Hawaii policy, and failed to provide GEICO a mailing or garaging location for their vehicles, until January 21, 2009. *Id.* ¶ 18. Even if appropriate expert testimony (which it certainly appears not to be), Akin's assertions regarding the scope of the evidence and what it establishes are ultimately unhelpful given that evidence presented by the Ingalls contradicts his assertions.

20. Chad Ingalls suffered various injuries resulting in medical expenses in excess of $100,000, and additional losses for lost earnings, loss of earning capacity, and loss of household services. Doc. No. 48-2, Ingalls Decl. ¶¶ 22-23.

On January 14, 2009, Chad Ingalls contacted GEICO to get approval for medical treatment under his personal injury protection (PIP) coverage. Doc. No. 48-2, Ingalls Decl. ¶ 9. GEICO told him that there was no PIP coverage under the policy because he was in a rental car and not his GEICO covered vehicle. *Id.* During that call, GEICO updated Chad Ingalls' address to P.O Box. 700301, Kapolei, Hawaii 96709-0301. *Id.*; Doc. No. 44-1, Langley Decl. ¶ 10(h).

On January 15, 2009, GEICO reissued the California policy to the Ingalls at their P.O. Box in Kapolei, Hawaii. Doc. No. 48, Ingalls CSF ¶ 32; Langley Decl. ¶ 10(h). On January 22, 2009, GEICO issued the Hawaii policy and adjusted the policy premiums. Doc. No. 48, Ingalls CSF ¶ 33; *see also* Doc. No. 48-5, Ingalls' Ex. 2 (Hawaii insurance policy). The Hawaii insurance policy provides for UM/UIM insurance for the Ingalls' two vehicles with limits of $100,000 per person and $300,000 per occurrence, "stacked each person/each occurrence." Doc. No. 48-6, Ingalls' Ex. 3.

Chad Ingalls ultimately received $100,000 from Song's insurance carrier for the accident. *See* Doc. No. 44, GEICO CSF ¶ 47. GEICO has refused

to provide any UM/UIM coverage to Chad Ingalls for the accident on the basis that the California policy applies and does not allow stacking of UM/UIM coverage per vehicle, and that the $100,000 coverage he would otherwise be entitled to is offset by the $100,0000 he received from Song's insurance.

## B.    Procedural Background

The Ingalls filed their Complaint in the First Circuit Court of the State of Hawaii on August 31, 2010, and GEICO removed the action to this court on April 12, 2011.  The Amended Complaint seeks declaratory relief that Chad Ingalls is entitled to "stacked" UM/UIM coverage of at least $200,000 on the basis that his Hawaii insurance policy applies to his January 12, 2009 accident.

In the meantime, on December 21, 2010, GEICO filed its own action against the Ingalls in California state court seeking declaratory relief that California law applies to the interpretation of the Ingalls' policy and that Chad Ingalls is not entitled to "stacked" UM/UIM  because he did not purchase such coverage until after the accident.  On April 29, 2011, the Ingalls removed GEICO's California state action to the Central District of California, and subsequently brought a Motion to Transfer to the District of Hawaii pursuant to 28 U.S.C. § 1404.  On August 5, 2011, Judge S. James Otero granted the Ingalls' Motion to Transfer after weighing the relevant § 1404 factors.  On September 15, 2011, the

15

two actions were consolidated.

On April 19, 2012, GEICO filed its Motion for Partial Summary Judgment, and on April 20, 2012, the Ingalls filed their Motion for Partial Summary Judgment.  The parties filed Oppositions on June 12, 2012, and GEICO filed Evidentiary Objections to the Supplemental Declaration of Chad Ingalls in Support of the Ingalls' Opposition to the Motion for Partial Summary Judgment on June 19, 2012.  The parties filed Replies on June 19, 2012.[13]  A hearing was held on July 9, 2012.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."

---

[13]  The Ingalls also filed a Motion to Strike GEICO's Reply and Evidentiary Objections on June 20, 2012, and an Amended Motion to Strike on June 22, 2012.  GEICO filed an Opposition on June 21, 2012.  These filings constitute only part of *both* parties' numerous objections to the other's submissions for failure to follow the Local Rules.  The court views the parties' filings and objections as an unnecessary distraction to the substantive issues in this action.  Neither party has clean hands on this issue -- both parties lodged lengthy oppositions to statements of fact on points that ultimately do not affect the disposition of the Motions for Summary Judgment, and GEICO attempted to dodge the word-count limitations by resorting to formatting gymnastics that made certain filings illegible.  *See, e.g.*, Doc. Nos. 61, 71-1.  The court OVERRULES both parties' objections, instructs the parties to follow the Local Rules going forward, and requests that common sense prevail in the future.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV.  DISCUSSION

The parties' dispute is a product of the differences between Hawaii and California UM/UIM insurance benefits.  Under Hawaii law, a set-off provision requiring an injured party to offset his insurance benefits by any other settlements received from other tortfeasors involved in the same accident is not enforceable because "an insured [is] allowed to receive up to the amount of actual damage available to him under existing insurance agreements."  *See Abramson v. Aetna Cas. & Sur. Co.*, 83 F.3d 1173, 1174 (9th Cir. 1996) (citing *Estate of Calibuso v. Pac. Ins. Co.*, 62 Haw. 424, 616 P.2d 1357, 1360 (1980)); *see also Dai-Tokyo Royal State Ins. Co. v. Yokote*, 103 Haw. 181, 186, 80 P.3d 1002, 1007 (Haw. App. 2003) (collecting cases).  Hawaii law also requires an insurer to offer "the option to stack uninsured motorist coverage and underinsured motorist coverage," *see* HRS § 431:10c-301(d), which can only be rejected in writing.  *Id.*

18

§ 431:10c-301(b)(3); *see also Allstate Ins. Co. v. Morgan*, 59 Haw. 44, 49, 575

P.2d 477, 480 (1978). In comparison, California law provides that an insurer shall

offset the amount it otherwise owes under a policy by whatever an insured receives

from the tortfeasor. *See* Cal. Ins. Code § 11580.2(p)(4-5). Further, "California is

what has been called a nonstacking state" where a policy insures more than one

vehicle. *Cal. Cas. Indem. Exch. v. Pettis*, 239 Cal. Rptr. 205, 207 (Cal. Ct. App.

1987) (citing *Rudder v. Farmers Ins. Exchange*, 165 Cal. Rptr. 562 (Cal. Ct. App.

1980); *Allstate Ins. Co. v. Shmitka*, 90 Cal. Rptr. 399 (Cal. Ct. App. 1970)).

GEICO argues that at the time of the accident, the Ingalls had a

California insurance policy that must be governed by California insurance law.

GEICO asserts that its Motion "boils down to one issue -- whether there existed a

California Form Policy, which included an anti-stacking provision, in accordance

with the statutes of the State of California, at the time of the Subject Accident."

Doc. No. 59, GEICO Reply at 2. In comparison, the Ingalls argue that Chad

Ingalls notified GEICO that he was moving to Hawaii prior to the accident such

that a Hawaii policy governed by Hawaii law applied at the time of his accident.

The Ingalls further argue that even if the California policy was in force at the time

of Chad Ingalls' accident, it must still be construed pursuant to Hawaii law. The

court addresses these arguments in turn.

## A. The Policy in Effect at the Time of the Accident

Both parties assert that the issue of which policy applies to Chad Ingalls' January 12, 2009 accident is ripe for summary judgment determination, yet disagree on the answer. They both blithely ignore the summary judgment standard -- that is, that there is evidence supporting both parties' assertions regarding which policy applies, precluding summary judgment for either party.

In support of the Ingalls' position, Chad Ingalls asserts that he called GEICO a few weeks before their move to make sure their vehicles would be covered during shipping and to notify GEICO of their move to Hawaii. Doc. No. 44-6, Tisdale Decl. Ex. 1, Ingalls Decl. ¶ 7. Although he did not know their intended permanent address in Hawaii, *id.*, Chad Ingalls asserts that he uses his parents' address on Oahu as their default Hawaii address whenever a physical address is required, Doc. No. 55-1, Chad Ingalls Suppl. Decl. ¶¶ 2-3, and that he provided this address to GEICO. Doc. No. 48-9, Ingalls Ex. 6 at 44, 50-51, 58-59. By the time his conversation with GEICO ended, Chad Ingalls believed that he had moved his policy back to Hawaii effective on or about January 9, 2009. Doc. No. 48, Ingalls CSF ¶ 11. He was not told that there were any outstanding issues that needed to be addressed, and his understanding was that the policy would be moved effective January 9, 2009. Doc. No. 55-1, Chad Ingalls Suppl. Decl. ¶¶ 4-6.

This evidence establishes that within thirty days of his move, Chad Ingalls provided GEICO with an address where the vehicles would be located on Hawaii. And as GEICO asserts, an insurance policy will be changed over the phone so long as the insured calls within thirty days of a move and the insured provides a garaging address. *See* Doc. No. 44-1, Langley Decl. ¶¶ 5-7. Thus, the evidence, viewed in a light most favorable to the Ingalls, supports the inference that in December 2008, Chad Ingalls changed his insurance policy to Hawaii, effective January 9, 2009.[14]

On the other hand, GEICO has presented evidence that it logs all calls by insureds seeking to make policy changes in a Policy Log, and that all policy changes are logged on a Transaction Summary. *Id.* ¶ 7. GEICO has no record of Chad Ingalls calling in December 2008, suggesting that he in fact did not call to change his policy prior to the accident. Rather, GEICO did not record a change of address for the Ingalls until January 14, 2009, and did not issue the Hawaii policy

---

[14] At the July 9, 2012 hearing, GEICO argued that the Ingalls' evidence is simply not credible. The court rejects GEICO's argument -- "[o]n summary judgment, [the court] must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991); *see Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) ("If a rational trier of fact could resolve a genuine issue of material fact in the nonmoving party's favor, the court 'may not affirm a grant of summary judgment . . . because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" (quoting *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009))).

until January 22, 2009. Doc. No. 44-1, Langley Decl. ¶ 10(c), (f); Doc. No. 44-13, Tisdale Decl. Ex. H. If it is ultimately proven that Chad Ingalls did not call GEICO to change his policy prior to the accident, then the California policy may apply (the court addresses the Ingalls' alternative arguments regarding the California policy below). As a result, this evidence, viewed in a light most favorable to GEICO, supports the inference that the California policy was in effect at the time of the January 12, 2009 accident.

In light of this conflicting evidence regarding which policy was effective at the time of the January 12, 2009 accident, the court cannot resolve this issue on summary judgment. The court therefore DENIES GEICO's Motion for Partial Summary Judgment;[15] and DENIES the Ingalls' Motion for Partial Summary Judgment to the extent they seek a determination of which policy applied at the time of the accident.

## B. The Ingalls' Alternative Arguments Assuming that the California Policy Applies

The Ingalls argue that even if the California policy was in effect at the time of the accident, Hawaii law still applies because (1) the California policy is

---

[15] Because the court finds that genuine issues of material fact exist regarding which policy was in effect at the time of the accident, the court does not address GEICO's arguments that rely on the court's determination of which policy applies (*i.e.*, GEICO's choice-of-law analysis under the California policy, interpretation of the HRS regarding availability of stacking where the vehicle is not located in Hawaii, and its "reformation" argument).

ambiguous and must be construed against GEICO; and (2) a choice-of-law analysis compels application of Hawaii law. Based on the following, the court disagrees that the Ingalls have identified any ambiguity in the California policy, and further finds that the parties have not sufficiently briefed the choice-of-law issue such that this aspect of the Ingalls' Motion is denied without prejudice.

### 1. *California Policy Ambiguity*

In general,[16] the court construes the terms of an insurance policy according to its plain language as understood by a layperson. *See Guajardo v. AIG Haw. Ins. Co.*, 118 Haw. 196, 202, 187 P.3d 580, 586 (2008) (citing *Dairy Rd. Partners v. Island Ins. Co.*, 92 Haw. 398, 411-12, 992 P.2d 93, 106-07 (2000) (internal citations, quotation marks, brackets, and ellipses omitted) (discussing Hawaii law)); *Sequoia Ins. Co. v. Royal Ins. Co. of Am.*, 971 F.2d 1385, 1389 (9th Cir. 1992) (citing *Horace Mann Ins. Co. v. Analisa N.*, 263 Cal. Rptr. 61, 63 (Cal. Ct. App. 1989)). But "because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, . . . they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Guajardo*, 118 Haw. at 202, 187 P.3d at 586; *AIU Ins. Co. v.*

---

[16] Because California and Hawaii courts apply the same general principles to interpreting insurance contracts, the court addresses the Ingalls' argument regarding contract interpretation without determining what substantive law applies at this time.

*Superior Court*, 274 Cal. Rptr. 820, 823 (Cal. 1990).

The Ingalls argue that the California policy contains two ambiguities that must be construed in their favor to apply Hawaii law. First, the Ingalls argue that although the California policy includes a governing law provision requiring that the parties' agreement be construed pursuant to California law, this provision does not apply to the amounts of coverage and therefore does not govern this dispute. *See* Doc. No. 47-1, Ingalls Mot. at 24-25. Specifically, the policy includes several separate documents, including: (1) "Your California Family Automobile Insurance Policy" outlining the parties' general agreement, Doc. No. 69-1, at 0000018-33; (2) the "Family Automobile Policy Renewal Declarations" providing, among other things, the amounts of coverage, *see id.* at 0000002-07, and (3) the "Automobile Policy Amendment," which includes the governing law provision. *Id.* at 0000008-16. The Ingalls argue that because the governing law provision provides that "[t]he policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of California," it does not apply to the "Family Automobile Policy Renewal Declarations" containing the amounts of coverage such that the Declarations may be construed pursuant to Hawaii law.

This argument is borderline frivolous. These three sets of documents

together form the parties' full agreement and constitute the policy as a whole. Indeed, the "Family Automobile Policy Renewal Declarations" simply describe the coverages provided for under the "Your California Family Automobile Insurance Policy." It is, in short, part of the policy. And in any event, the "Your California Family Automobile Insurance Policy" includes a specific provision preventing the stacking of benefits, *id.* at 0000028-29, and the "Automobile Policy Amendment" includes a specific provision requiring GEICO to offset the amount of coverage. *Id.* at 0000009. As a result, even if the governing law provision did not apply to the specific amounts of coverage, it still applies to these provisions and would limit recovery pursuant to California law. The court therefore rejects that the California governing law provision does apply to the full scope of the parties' California policy.

Second, the Ingalls argue that Hawaii law applies due to the "LOSSES WE PAY" provision under the UM/UIM section of the policy, which provides:

> Under this coverage, we will pay damages for *bodily injury* to an *insured*, caused by accident which the *insured* is legally entitled to recover from the owner or operation of an *uninsured motor vehicle, underinsured motor vehicle or a hit-and-run motor vehicle* arising out of the ownership, maintenance or use of that motor vehicle.

Doc. No. 69-1, at 0000028. The Ingalls argue that this provision is ambiguous

because it does not specify what law must be used in determining the damages to which an insured is "legally entitled," especially where the policy provides elsewhere that it applies to "accidents, occurrences or losses during the policy period within the United States of America." *Id.* at 0000031. As a result, the Ingalls argue that the policy is ambiguous regarding whether "the law of the location of the accident, the law of the state where the policy was issued[,] or some other law is the law to be used in determining the damages to which the insured is 'legally entitled.'" Doc. No. 47-1, Ingalls Mot. at 14.

The court rejects this argument. As an initial matter, the court disagrees that the "LOSSES WE PAY" provision injects any ambiguity into the policy regarding what law applies to determining UM/UIM coverage. Rather, the phrase that GEICO will pay damages to which an insured is "legally entitled to recover" simply means that "the insured must be able to prove the elements of his or her claim against the tortfeasor." *See Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 214 (Ohio 2001) (quoting *Kurent v. Farmers Ins. of Columbus*, 581 N.E.2d 533, 536 (Ohio 1991)). Further, to the extent that the policy leaves open any question regarding what law applies in determining the damages to which an insured is "legally entitled," the governing law provision clarifies that California

law applies.[17]  Thus, reading the governing law provision together with the

"LOSSES WE PAY," the policy provides that the Ingalls are entitled damages

which they are legally entitled to recover under California law.

The court therefore DENIES the Ingalls' Motion for Partial Summary

Judgment to the extent it argues that ambiguities contained in the California policy

compel its interpretation pursuant to Hawaii law.

### 2.    *Whether Hawaii Law Applies Under a Choice-of-Law Analysis*

Applying a Hawaii choice-of-law analysis, the Ingalls argue that the

California policy must be construed pursuant to Hawaii law to allow stacking and

prohibit offsetting the amount of coverage.  This argument raises two questions --

first, whether Hawaii or California choice-of-law principles apply, and second,[18]

---

[17]  In support of their position, the Ingalls cite *Csulik v. Nationwide Mutual Insurance Co.*, 723 N.E.2d 90 (Ohio 2000), which held that a policy providing that the insurer agreed to pay "compensatory damages, including derivative claims, which are *due by law* to you or a relative," was ambiguous.  Unlike in this action, however, the policy did not include a governing law provision and provided in other places what law applies to specific provisions such that *Csuilik* reasoned that the insurer could have clarified this provision.  The Ingalls also cite to *Modroo v. Nationwide Mutual Fire Insurance Co.*, 191 P.3d 389 (Mont. 2008), which actually supports the court's conclusion.  *Modroo* held that where a policy included both a governing law provision providing that the "contract law of the State of Ohio governs the interpretation of this contract," and a provision that the insurer would pay compensatory damages that the insured is "legally entitled to recover . . . under the tort law of the state where the motor vehicle accident occurred," Ohio contract law governed interpretation of the policy while the law of the state where the accident occurred determined the insured's entitlement to damages.  *Id.* at 398-99.

[18]    An intermediate question is whether there is an "an *actual* or real conflict between the potentially applicable laws.  If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary."  *Hamby v. Ohio Nat'l Life Assur. Corp.*, 2012 WL 2568149, at *3 (D. Haw. June 29, 2012) (quoting *Hammersmith v. TIG Ins. Co.*, 480

(continued...)

whether, under the applicable choice-of-law analysis, Hawaii law necessarily applies to the California policy. Although the court is able to answer the first question, the court finds that the parties have not adequately addressed the second question.

    *a. Whether California or Hawaii choice-of-law principles apply*

    A federal court exercising diversity jurisdiction must apply the forum state's choice-of-law principles to determine the body of substantive law that applies to its interpretation of a contract. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007). On August 31, 2010, the Ingalls filed this action in the First Circuit Court of the State of Hawaii asserting a claim against GEICO seeking UM/UIM benefits pursuant to Hawaii law, and GEICO removed the action to this court on April 12, 2011. As a result, it appears that Hawaii is the forum state and the court must apply Hawaii choice-of-law principles in determining what law applies to interpretation of the California policy.

    Complicating this matter, however, is that GEICO filed its own action in California state court on December 21, 2010, which was removed to federal court, transferred to this court for the convenience of the parties, and consolidated

---

[18](...continued)
F.3d 220, 230 (3d Cir. 2007)). The parties do not appear to dispute that the substantive laws of Hawaii and California are in conflict.

with the Ingalls' action. In general, where an action is transferred for the convenience of the parties, the court "must apply the law of the transferor court to prevent parties from seeking a change in venue to take advantage of more favorable laws in another forum." *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983) (citing *Van Dusen v. Barrack,* 376 U.S. 612 (1964)); *see also In re Korean Air Lines Co.*, 642 F.3d 685, 700 n. 12 (2011) (collecting cases). GEICO argues that the court must apply California choice-of-law principles because its action was transferred from California and the Central District of California stated in its transfer order that this court should apply California state law to the dispute. *See* Doc. No. 43-1, GEICO Mot. at 14-16. The court disagrees.

Although the court recognizes that it should generally apply the law of the transferor court to an action transferred for the convenience of the parties, the court finds that this principle does not apply to these circumstances where GEICO filed its California action in reaction to the Ingalls' Hawaii state action and GEICO raises nearly identical issues as those raised by the Ingalls. To accept GEICO's argument would mean that the court would either (1) apply California choice-of-law principles to the entire dispute even though the Hawaii state action was filed first, or (2) apply Hawaii choice-of-law principles to the Ingalls' claims, and at the same time apply California choice-of-law principles to GEICO's identical claims.

To apply California choice-of-law principles to *any* part of this dispute would effectively reward GEICO for filing a duplicative action in an apparent effort to take advantage of California's more favorable laws.[19]  In other words, blind application of the general rule that the court should apply the law of the transferor court would result in the very evil it seeks to prevent -- strategic litigation tactics that are deployed to "take advantage of more favorable laws in another forum." *Nelson*, 716 F.2d at 643.

At the July 9, 2012 hearing, GEICO further clarified this argument by asserting that California is the forum state because GEICO was the first party to assert a claim for declaratory relief, and made such claim in California state court. The court rejects this argument -- the Ingalls filed their Hawaii state action first, and their Complaint asserted a claim against GEICO seeking UM/UIM coverage under Hawaii law for $200,000.  *See* Doc. No. 1-2, Compl. ¶ 15.  That the Ingalls phrased this claim as seeking damages as opposed to declaratory relief does not change that the Ingalls were the first party to file an action seeking a determination of insurance coverage.  As a result, Hawaii is the forum state.

---

[19]  As described below, courts applying Hawaii choice-of-law principles have generally found that Hawaii law applies to the interpretation of an out-of-state insurance policy where the injury occurs in Hawaii and the policy includes no governing law provision.  In comparison, at least one California court has held that California law should apply.  *See Cal. Cas. Indem. Exchange v. Pettis*, 239 Cal. Rptr. 205 (Cal. App. 1987).

Finally, the court rejects GEICO's suggestion that the Central District of California has already determined that California law must apply to this action. *See* Doc. No. 43-1, GEICO Mot. at 15-16. GEICO takes out of context the following language from the Central District of California's Order Transferring this action to the District of Hawaii in which it rejected GEICO's argument that the action could not be transferred because the California policy's governing law provision also served as a forum-selection clause:

> [GEICO] first conflates its [governing] law provision with a forum selection clause. The [governing law] provision does not "mandate that the case remain" in any "jurisdiction," as [GEICO] claims in its Opposition. Rather the provision only states that the "[P]olicy and any amendments and endorsements" are to be interpreted pursuant to California law. The [governing law] provision does not prevent the case at hand from being filed in the District of Hawaii. Second, the District court for the District of Hawaii is perfectly qualified to interpret and apply the laws of the state of California. [GEICO] provides neither evidence nor arguments contesting the Hawaii District Court's ability to interpret the Policy pursuant to California Law.

Doc. No. 44-14, Tisdale Ex. I at 3-5. As is clear from this language, the Central District of California made no determination of what law applies in interpreting the California policy (and indeed, did not need even perform a choice-of-law analysis). Rather, the Central District of California merely explained that if the California policy and its governing law provision applies to the parties' dispute, then the

31

District of Hawaii is fully capable of applying California law.

In sum, the court finds that if the California policy was in effect at the time of the accident, then Hawaii choice-of-law principles apply to determine the body of substantive law that applies to the policy's interpretation.[20]

>    *b.*     *Application of Hawaii choice-of-law principles*

Although the court is able to determine that Hawaii choice-of-law principles would apply, the parties have not adequately addressed the next part of the analysis -- *i.e.*, whether, under a Hawaii choice-of-law analysis, the court can determine on summary judgment that Hawaii substantive law applies to interpreting the California policy where the policy includes a governing law provision providing that it shall be interpreted pursuant to California law.

In arguing that Hawaii law should apply to interpretation of the California policy, the Ingalls focus on the parties' connections to Hawaii and Hawaii's strong public policy in protecting the rights of persons within the state to recover insurance benefits.  Doc. No. 47-1, Ingalls Mot. at 19-23; *see also Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006)

---

[20]  Because the court finds that Hawaii choice-of-law principles apply, the court need not address the Ingalls' arguments applying California choice-of-law principles.  *See* Doc. No. 47-1, Ingalls Mot. at 23-30 (arguing that even under California choice-of -law principles, Hawaii law would apply to determining UM/UIM benefits under the California policy for the January 12, 2009 accident).

(stating that under the Hawaii choice-of-law principles, "[p]rimary emphasis is placed on deciding which state would have the strongest interest in seeing its laws applied to the particular case" (quoting *Lewis v. Lewis*, 69 Haw. 497, 499, 748 P.2d 1362, 1365 (1988))). The Ingalls further attempt to align this action with other cases holding that Hawaii law applies in determining the amount of UM/UIM benefits under an out-of-state policy where the accident occurs in Hawaii. Doc. No. 47-1, Ingalls Mot. at 19.

The court recognizes that the Hawaii Supreme Court, the District of Hawaii, and the Ninth Circuit have all applied Hawaii substantive law in interpreting out-of-state insurance policies where an accident occurs in Hawaii. *See Mikelson v. United Servs. Auto. Assoc.*, 107 Haw. 192, 111 P.3d 601 (2005) (holding that where California policy included a geographical area provision providing coverage throughout the United States, Hawaii law applied to Hawaii accident); *Abramson v. Aetna Cas. & Surety Co.*, 76 F.3d 304, 305 (9th Cir. 1996) (applying Hawaii law to New Jersey policy where accident occurred in Hawaii and there was a "lack of any negotiation over the terms of the contract and the parties' expectations that the contract would cover the insured as he traveled throughout the United States and Canada"); *Lemen v. Allstate Ins. Co.*, 938 F. Supp. 640, 643-44 (D. Haw. 1995) (determining that Hawaii law applied to Alaska insurance policy

because the accident occurred in Hawaii, the injured was attending University of Hawaii, and Hawaii "has a strong interest in protecting the rights of persons within the state to recover benefits pursuant to automobile insurance policies").

Although this caselaw may ultimately be very helpful in the court's choice-of-law analysis, they are arguably distinguishable because none of them addresses the situation presented here where the policy includes a governing law provision. To that end, the Hawaii Supreme Court has relied on the Restatement (Second) of Conflict of Laws § 187 (1971) ("§ 187") for guidance, and the parties agreed at the July 9, 2012 hearing that § 187 would apply in this action. *See Airgo, Inc. v. Horizon Cargo Transport, Inc.*, 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983) (relying on § 187 for the principle that "[w]hen the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, that law will generally be applied."); *see also Del Monte Fresh Produce, Inc. v. Fireman's Fund Ins. Co.*, 117 Haw. 357, 364, 183 P.3d 734 (2007) (explaining that the Hawaii Supreme Court has previously been "guided by" § 187);

Specifically, § 187 provides:

(1)    The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement

34

directed to that issue.

(2)     The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

     (a)     the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

     (b)     application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

As to adhesion contracts, comment b to § 187 provides:

A factor which the forum may consider is whether the choice-of-law provision is contained in an "adhesion" contract, namely one that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party who has no real opportunity to bargain about its terms.  Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print.  Common examples are tickets of various kinds and insurance policies.  Choice-of-law provisions contained in such contracts are usually respected.  Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.

The parties have not addressed in any meaningful way how this

framework applies to the facts of this case. The court therefore DENIES the Ingalls' Motion for Partial Summary Judgment, without prejudice to the parties filing motions for summary judgment addressing the specific issue of whether Hawaii substantive law applies to determine the amount of coverage under the California policy.

## V.  **CONCLUSION**

Based on the above, the court DENIES GEICO's Motion for Partial Summary Judgment, and DENIES the Ingalls' Motion for Partial Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 12, 2012.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge


*Ingalls v. Gov't Employees Ins. Co.*, Civ. No. 11-00244 JMS/RLP, Order (1) Denying Government Employees Insurance Company's Motion for Partial Summary Judgment, Doc. No. 43; and (2) Denying Chad Ingalls' and Pearl Ingalls' Motion for Summary Judgment, Declaratory Judgment and Other Relief, Doc. No. 47