IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHAD INGALLS,<br><br>            Plaintiff,<br><br>vs.<br><br>GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY, JOHN<br>DOES 1-50, et al.,<br><br>            Defendants.<br>_____<br>GEICO (GOVERNMENT<br>EMPLOYEES INSURANCE<br>COMPANY),<br><br>            Plaintiff,<br><br>vs.<br><br>CHAD J. INGALLS and PEARL<br>INGALLS, et al.,<br><br>            Defendants.<br>_____ | CIVIL NO. 11-00244 JMS/RLP<br>CIVIL NO. 11-00488 JMS/KSC<br><br>ORDER (1) GRANTING CHAD<br>INGALLS' AND PEARL INGALLS'<br>SECOND MOTION FOR<br>SUMMARY JUDGMENT, DOC.<br>NO. 86; AND (2) DENYING<br>GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY'S<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT, DOC.<br>NO. 90 |

**ORDER (1) GRANTING CHAD INGALLS' AND PEARL INGALLS'
SECOND MOTION FOR SUMMARY JUDGMENT, DOC. NO. 86; AND
(2) DENYING GOVERNMENT EMPLOYEES INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT, DOC. NO. 90**

## I. INTRODUCTION

On January 12, 2009, Plaintiff Chad Ingalls, who was in the midst of

moving his household from California to Hawaii, was driving a rented vehicle on

Oahu when he was rear-ended by Jung Yun Song ("Song").  Chad Ingalls suffered various injuries and subsequently sought uninsured/underinsured motorist ("UM/UIM") benefits under his insurance policy with Government Employees Insurance Company ("GEICO").

GEICO has refused to make any payments under the policy, and the parties dispute (1) whether Chad Ingalls' claim is governed by his California policy or the Hawaii policy GEICO issued after the accident; and (2) if the dispute if governed by the California policy, whether Hawaii substantive law applies even though the policy provides that coverage is governed by California law.  And the difference between Hawaii law and California law is significant -- if Hawaii law applies, Chad and Pearl Ingalls (the "Ingalls") may be entitled to "stack" their UM/UIM coverage by the number of vehicles insured under the policy such that even though the policy provides UM/UIM coverage in the amount of $100,000 per person, it would provide a total of $200,000 in benefits because the policy covers two vehicles.  If California law applies, the Ingalls cannot stack the UM/UIM coverage and the amount that they would otherwise be entitled to under the policy ($100,000) must be offset by what they received from Song ($100,000), meaning that they are not entitled to any benefits.

On July 12, 2012, the court denied a first round of summary judgment motions directed to whether the California policy or Hawaii policy applies. *See Ingalls v. GEICO*, 2012 WL 287562 (D. Haw. July 12, 2012) (the "July 12 Order"). The July 12 Order further denied summary judgment on the Ingalls' alternative argument that Hawaii law would apply even if the California policy was in effect at the time of the accident. The July 12 Order determined that Hawaii law choice-of-law principles apply, but found that the parties had not adequately briefed application of those principles to the California policy. *Id.* at *11-12. The court therefore provided the parties the opportunity to submit Motions addressing this issue, which are now before the court.

Based on the following, the court finds that even if the California policy was in effect at the time of the accident, Hawaii substantive law still applies. The court therefore GRANTS the Ingalls' Second Motion for Summary Judgment, Doc. No. 86, and DENIES GEICO's Motion for Partial Summary Judgment, Doc. No. 90.

///

///

///

///

## II. <u>BACKGROUND</u>

**A.      Factual Background**[1]

**_1._**      **_The Ingalls' Automobile Insurance With GEICO_**

Chad Ingalls first obtained automobile insurance with GEICO in 1992

while he was a Hawaii resident.  Doc. No. 48, Ingalls' Concise Statement of Facts

("CSF") ¶ 1.[2]  Chad Ingalls added his wife Pearl Ingalls to the policy in 1996, and

maintained coverage with GEICO during their moves within Hawaii, multiple

moves between Hawaii and Arizona, a move from Arizona to California, and a

move from California to Hawaii.  _See_ Doc. No. 48-10, Ingalls Ex. 7 at 22, 23, 28,

41.  Although each move resulted in different insurance coverage, premiums, and

terms and conditions,[3] Doc. No. 44-15, Akin Decl. ¶ 5, Chad Ingalls' policy

---

[1]  This recitation of facts is based on those facts presented in both in the first and second rounds of summary judgment motions.  The parties agree that the court's earlier recitation of facts in its July 12 Order is correct.  _See_ Doc. No. 89, GEICO Mot. at 4; _see also_ Doc. No. 87 Ingalls' Concise Statement of Facts.

[2]  Where the parties do not dispute a particular fact, the court cites directly to the relevant CSF.  Further, because the Ingalls did not number their CSF, the court counts each fact in order.

[3]  The parties dispute whether each move resulted in a different policy, as opposed to a modification of the original policy.  _See_ Doc. No. 44, GEICO CSF ¶ 7; Doc. No. 66, Ingalls' Opp'n to GEICO's CSF ¶ 7.  At least for his moves to California and Hawaii, the Ingalls were issued new policies for each move.  Ultimately, however, whether the Ingalls were issued a new contract with each move or whether each new policy was a modification of the previous policy is an issue that the court need not resolve to determine the Motions for Summary Judgment. Regardless of how the court views each policy, it is undisputed that Chad Ingalls had a long-standing relationship with GEICO.

number changed only twice,[4] and there was never a cancellation of coverage.  Doc. No. 48, Ingalls CSF ¶ 23; *see also* Doc. No. 48-2, Ingalls Decl. ¶ 32.  Ingalls' GEICO coverage was continuous during the course of these moves and throughout these years.  Doc. No. 44-1, Langley Decl. ¶ 10(a).

### 2.   *The Ingalls' Move to California and the California Policy*

In June 2008, the Ingalls moved from Arizona to Blythe, California (their first and only move to California).  Doc. No. 48-9, Ingalls Ex. 6 at 33, 83.  As was his practice, Chad Ingalls notified GEICO of this move, resulting in GEICO recording their mailing and rated address as of June 6, 2008 as 460 North 8th Street, Blythe, California 92225-1811.  Doc. No. 44-1, Langley Decl. ¶ 10(e).  Thereafter, premiums for the Ingalls' insured vehicles (a 2008 Honda Civic and a 2005 Lincoln Navigator) were based on California law.  Doc. No. 44-1, Langley Decl. ¶ 10(e).

The Ingalls' California policy provided for UM/UIM coverage, with limits of $100,000 per person and $300,000 per occurrence.  Doc. No. 89-1, at page 3 of 29.  The California policy, in its amendments, also includes a provision offsetting GEICO's liability for underinsured motorist coverage by the amount

---

[4] The policy number changed once in 1999 when the policy was moved to a preferred risk company, and in 2004 when GEICO added digits to the end of the policy number for internal reasons.  Doc. No. 48, Ingalls CSF ¶¶ 23-24.

paid by any person liable for the injury:

>REIMBURSEMENT AGREEMENT AND OFFSET
>PROVISION.  OUR RIGHT TO RECOVER
>PAYMENT.
>. . . If an award or judgment against, or settlement with,
>any party that the *insured* claimed was responsible for the
>*bodily injury* has been concluded, then the amounts we
>owe under this coverage shall be reduced by the amount
>of that award, judgment, or settlement.

*Id.* at page 22 of 29.  Finally, another amendment to the policy includes a

governing law provision,[5] providing that "[t]he policy and any amendment(s) and

endorsement(s) are to be interpreted pursuant to the laws of the state of California."

*Id.* at page 24 of 29.

  The Ingalls renewed this policy on November 1, 2009, with coverage

running from December 6, 2008 through June 6, 2009.  Doc. No. 44-1, Langley

Decl. ¶ 10(f).  An invoice was sent to the Ingalls' California address in December

2009, *see id.* ¶ 10(g); Doc. No. 44-3, Langley Decl. Ex. B, and the Ingalls paid the

amount via Auto Pay on December 31, 2008.  Doc. No. 55-1, Chad Ingalls Suppl.

Decl. ¶ 7.

*///*

*///*

---

[5] To prevent any confusion between this provision in the California policy and the more general choice-of-law principles discussed below, the court refers to this provision as a "governing law provision" as opposed to a "choice-of-law provision."

### 3.     *The Ingalls' Move From California to Hawaii*

The Ingalls' move to California was ultimately short-lived -- by

December 2008, the Ingalls were planning to return to Hawaii in early January

2009.[6]  *See* Doc. No. 48, Ingalls CSF ¶ 9.  To that end, sometime in December

2008, when Chad Ingalls renewed his California policy, he told GEICO that he

planned to move to Hawaii (although the parties dispute the actual nature of this

notice).  Doc. No. 79, GEICO Pretrial Statement at 15.  The Ingalls also took their

two vehicles to shipping companies on January 7 and 8, 2009 to have them shipped

to Hawaii.  Doc. Nos. 48-14, -15, Ingalls Exs. 11-12.  On January 9, 2009, the

Ingalls returned to Hawaii and became permanent residents.  Doc. No. 48, Ingalls

CSF ¶ 14.

On January 12, 2009, Chad Ingalls was driving a Hawaii rental car in

Kapolei, Hawaii when he was rear-ended by Song.  *Id.* ¶¶ 18-19.  At the time of the

accident, Chad Ingalls had a Hawaii driver's license, and Song likewise was a

Hawaii resident with a Hawaii driver's license and driving a car licensed and

garaged in Hawaii.  Doc. No. 48-4, Ingalls Ex. 1; Doc. No. 48, Ingalls CSF ¶¶ 19-

20.  Chad Ingalls suffered various injuries resulting in medical expenses in excess

of $100,000, and additional losses for lost earnings, loss of earning capacity, and

---

[6]  As a result, Chad Ingalls never obtained a California driver's license and did not register his cars in California.  Doc. No. 48-2, Chad Ingalls Decl. ¶ 13.

loss of household services.  Doc. No. 48-2, Ingalls Decl. ¶¶ 22-23.

Chad Ingalls ultimately received $100,000 from Song's insurance carrier for the accident.  *See* Doc. No. 44, GEICO CSF ¶ 47.  GEICO has refused to provide any UM/UIM coverage to Chad Ingalls for the accident on the basis that the California policy applies and does not allow stacking of UM/UIM coverage per vehicle, and that the $100,000 coverage he would otherwise be entitled to is offset by the $100,0000 he received from Song's insurance.

## B.     Procedural Background

The Ingalls filed their Complaint in the First Circuit Court of the State of Hawaii on August 31, 2010, and GEICO removed the action to this court on April 12, 2011.  The Amended Complaint seeks declaratory relief that Chad Ingalls is entitled to "stacked" UM/UIM coverage of at least $200,000 on the basis that his Hawaii insurance policy applies to his January 12, 2009 accident.

In the meantime, on December 21, 2010, GEICO filed its own action against the Ingalls in California state court seeking declaratory relief that California law applies to the interpretation of the Ingalls' policy and that Chad Ingalls is not entitled to "stacked" UM/UIM because he did not purchase such coverage until after the accident.  On April 29, 2011, the Ingalls removed GEICO's California state action to the Central District of California, and subsequently

brought a Motion to Transfer to the District of Hawaii pursuant to 28 U.S.C. § 1404.  On August 5, 2011, Judge S. James Otero granted the Ingalls' Motion to Transfer.  On September 15, 2011, the two actions were consolidated.

In April 2012, the parties filed their first round of Motions for Summary Judgment.  During the July 9, 2012 hearing on those Motions, the court explained that the Motions would be denied, without prejudice to the parties filing motions for summary judgment addressing application of Hawaii choice-of-law principles to the California policy.  Specifically, the court identified the issue as: Assuming the California policy was in effect at the time of the January 12, 2009 accident, does Hawaii substantive law apply to determine the amount of coverage under the California policy?  Doc. No. 80.  The July 12 Order followed.

The Ingalls filed their Second Motion for Summary Judgment on August 31, 2012, and GEICO filed its Motion for Partial Summary Judgment on September 4, 2012.  Oppositions were filed on September 17, 2012, GEICO filed a Reply on September 19, 2012, and the Ingalls filed a Reply on October 1, 2012.  A hearing was held on October 15, 2012.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is

'material' only if it could affect the outcome of the suit under the governing law."

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).   When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor" (citations omitted)).

## IV.  DISCUSSION

As the July 12 Order explains, the parties' dispute is a product of the

differences between Hawaii and California UM/UIM insurance benefits.  Under

Hawaii law, a set-off provision requiring an injured party to offset his insurance

benefits by any other settlements received from other tortfeasors involved in the

same accident is unenforceable because "an insured [is] allowed to receive up to

the amount of actual damage available to him under existing insurance

agreements."  *See Abramson v. Aetna Cas. & Sur. Co.*, 83 F.3d 1173, 1174 (9th

Cir. 1996) (citing *Estate of Calibuso v. Pac. Ins. Co.*, 62 Haw. 424, 616 P.2d 1357,

1360 (1980)).  Hawaii law also mandates an insurer to offer "the option to stack

uninsured motorist coverage and underinsured motorist coverage," which can only

be rejected in writing.  *See* Hawaii Revised Statute ("HRS") § 431:10c-301(d); *see*

*also Allstate Ins. Co. v. Morgan*, 59 Haw. 44, 49, 575 P.2d 477, 480 (1978); *Dai-*

*Tokyo Royal State Ins. Co. v. Yokote*, 103 Haw. 181, 186, 80 P.3d 1002, 1007

(Haw. App. 2003) (collecting cases).  In comparison, California law provides that

an insurer shall offset the amount it otherwise owes under a policy by whatever an

insured receives from the tortfeasor.  *See* Cal. Ins. Code § 11580.2(p)(4-5).

Further, "California is what has been called a nonstacking state" where a policy

insures more than one vehicle.  *Cal. Cas. Indem. Exch. v. Pettis*, 239 Cal. Rptr.

205, 207 (Cal. Ct. App. 1987) (citing *Rudder v. Farmers Ins. Exchange*, 165 Cal.

Rptr. 562 (Cal. Ct. App. 1980); *Allstate Ins. Co. v. Shmitka*, 90 Cal. Rptr. 399 (Cal.

Ct. App. 1970)).

       The July 12 Order found that even if the California policy was in

effect at the time of Chad Ingalls' January 12, 2009 accident, Hawaii choice-of-law

principles would apply in determining whether Hawaii or California substantive

law controls interpretation of the California policy.  And applying Hawaii choice-

of-law principles, the court has already found, and the parties agree, that the

Restatement (Second) of Conflict of Laws § 187 (1971) ("§ 187"), outlines the

relevant inquiry.  *See also Airgo, Inc. v. Horizon Cargo Transport, Inc*., 66 Haw.

590, 595, 670 P.2d 1277, 1281 (1983) (relying on § 187 for the principle that

"[w]hen the parties choose the law of a particular state to govern their contractual

relationship and the chosen law has some nexus with the parties or the contract,

that law will generally be applied"); *see also Del Monte Fresh Produce, Inc. v.*

*Fireman's Fund Ins. Co.*, 117 Haw. 357, 364, 183 P.3d 734 (2007) (explaining that

the Hawaii Supreme Court has previously been "guided by" § 187).  The court

therefore first outlines the framework under § 187, and then applies the framework

to the facts of this case.

## A.      Framework

In relevant part, § 187(2) provides:

The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless . . .

(b)  application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188,[7] would be the state of the applicable law in the absence of an effective choice of law by the

---

[7]   Section 188 of the Restatement, titled "Law Governing In Absence Of Effective Choice By The Parties," provides that where a contract includes no governing law provision, the court should consider "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

parties.

Based upon its plain language, § 187(2)(b)[8] provides that the court

must apply the governing law provision unless (1) application of the governing law

provision would be contrary to a fundamental policy of Hawaii; (2) Hawaii has a

materially greater interest than California in determining insurance coverage under

the policy; and (3) under § 188 of the Restatement, Hawaii law would apply in the

absence of an effective choice of law by the parties.  *See also Modroo v.*

*Nationwide Mutual Fire Insurance Co.*, 191 P.3d 389, 400 (Mont. 2008)

(providing that under § 187(2), the court "will not apply the laws of the state

chosen by the parties if three factors are met: (1) if, but for the choice-of-law

provision, Montana law would apply under § 188 of the Restatement; (2) if

Montana has a materially greater interest in the particular issue than the state

chosen by the parties; and (3) if applying the state law chosen by the parties would

contravene a fundamental policy of Montana").

Despite these inquiries outlined in § 187(2)(b), however, the Hawaii

Supreme Court has expressly rejected § 188 in determining what law applies in the

---

[8]  The parties also argue regarding application of § 187(2)(a), which provides that a governing law provision will apply unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice."  Because § 187(2)(a) and §187(2)(b) are written in the disjunctive, and because the court grants the Ingalls' Motion for Summary Judgment on the basis of § 187(2)(b), the court does not address § 187(2)(a).

absence of a governing law provision.  Rather, the Hawaii Supreme Court has

adopted a more flexible approach of determining which state has the most

significant relationship to the dispute:

> This court has "moved away from the traditional and
> rigid conflict-of-laws rules in favor of the modern trend
> towards a more flexible approach looking to the state
> with the most significant relationship to the parties and
> subject matter." *Lewis v. Lewis*, 69 Haw. 497, 499, 748
> P.2d 1362, 1365 (1988) ([citing *Peters v. Peters*, 63 Haw.
> 653, 634 P.2d 586 (1981)]).  This flexible approach
> places "[p]rimary emphasis . . . on deciding which state
> would have the strongest interest in seeing its laws
> applied to the particular case." *Id*.  Hence, this court has
> said that the interests of the states and applicable public
> policy reasons should determine whether Hawaii law or
> another state's law should apply.  *See Peters*, 63 Haw. at
> 667-68, 634 P.2d at 595.  "The preferred analysis, [then]
> in our opinion, would be an assessment of the interests
> and policy factors involved with a purpose of arriving at
> a desirable result in each situation." *Id.* at 664, 634 P.2d
> at 593.

*Mikelson v. United Servs. Auto. Assoc.*, 107 Haw. 192, 201, 111 P.3d 601, 610

(2005); *see also Del Monte Fresh Produce*, 117 Haw. at 364, 183 P.3d at 741

(rejecting the use of § 188).

Given the Hawaii Supreme Court's rejection of § 188, the court

concludes that the Hawaii Supreme Court, in applying § 187(2)(b), would consider

which state has the most significant relationship to the dispute instead of applying

§ 188.  And because § 187(2)(b) already requires the court to consider whether

Hawaii has a materially greater interest than California in the dispute, these two inquiries are essentially one and the same. Thus, the court determines that it must apply the California governing law provision unless (1) California law is contrary to a fundamental policy of Hawaii, and (2) Hawaii has a materially greater interest than California in determining coverage under the policy.[9] The court addresses each of these inquiries.

## B. Application

### 1. *Whether California Law Is Contrary to a Fundamental Law of Hawaii*

There is no dispute that while Hawaii allows stacking of UM/UIM benefits and prohibits an insurer from offsetting benefits recovered from other parties, California law is directly opposite. Thus, at issue is whether Hawaii's policy of stacking and prohibition of offsets is "fundamental."

Whether a "fundamental" policy exists is a fact-intensive inquiry that

---

[9] Indeed, apparently following the modern trend away from the formulaic recitation of § 188, other courts in outlining § 187(2)(b) have not applied the § 188 analysis in favor of considering which state has a materially greater interest. *See Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 466 (Cal. 1992) (The court must "determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue . . . ." (quoting § 187(2) (footnote omitted)); *Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (outlining factors in *Nedlloyd*); *Pepe v. GNC Franchising, Inc.*, 750 A.2d 1167, 1169 (Conn. Super. Ct. 2000) (outlining factors in *Nedlloyd*); *see also* Doc. No. 86, Ingalls Mot. at 14-15 (outlining framework from *Nedlloyd*).

cannot necessarily be drawn with "bright lines."  *Discover Bank v. Super. Ct.*, 36 Cal. Rptr. 3d 456, 460 (Cal. Ct. App. 2005) ("We are not aware of any bright-line rules for determining what is and what is not contrary to a fundamental policy of California."); *see also* Restatement § 187, comment g ("No detailed statement can be made of the situations where a 'fundamental' policy of the state of the otherwise applicable law will be found to exist.").

With that said, however, comment g to § 187 provides some guidance:

> To be "fundamental," a policy must in any event be a substantial one.  Except perhaps in the case of contracts relating to wills, a policy of this sort will rarely be found in a requirement, such as the statute of frauds, that relates to formalities (see Illustration 6).  Nor is such policy likely to be represented by a rule tending to become obsolete, such as a rule concerned with the capacity of married women (see Illustration 7), or by general rules of contract law, such as those concerned with the need for consideration (see Illustration 8).  On the other hand, a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power.  Statutes involving the rights of an individual insured as against an insurance company are an example of this sort (see §§ 192-193).  To be "fundamental" within the meaning of the present rule, a policy need not be as strong as would be required to justify the forum in refusing to entertain suit upon a foreign cause of action under the rule of §

90.[10]

With these principles in mind, and in predicting whether the Hawaii Supreme Court would hold that providing such coverage is a fundamental policy, the court finds helpful the guidance provided by the Hawaii Supreme Court, the District of Hawaii, and the Ninth Circuit in deciding to apply Hawaii law to out-of-state insurance policies where the accident occurs in Hawaii.  *See Mikelson*, 107 Haw. at 200, 111 P.3d at 609 (holding that where California policy included a geographical area provision providing coverage throughout the United States, Hawaii law applied to Hawaii accident involving insured who was a student at the University of Hawaii); *Abramson v. Aetna Cas. & Surety Co.*, 76 F.3d 304, 305 (9th Cir. 1996) (applying Hawaii law to New Jersey policy where accident occurred in Hawaii and there was a "lack of any negotiation over the terms of the contract and the parties' expectations that the contract would cover the insured as he travelled throughout the United States and Canada"); *Lemen v. Allstate Ins. Co.*, 938 F. Supp. 640, 643-44 (D. Haw. 1995) (determining that Hawaii law applied to Alaska insurance policy because the accident occurred in Hawaii, the injured was attending University of Hawaii, and Hawaii "has a strong interest in protecting the

---

[10]  Section 90 of the Restatement provides that "[n]o action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum."

rights of persons within the state to recover benefits pursuant to automobile insurance policies").  Although none of these cases addresses the specific situation presented here where the policy includes a governing law provision, they nonetheless articulate a strong and unequivocal policy in favor of applying Hawaii law to interpret out-of-state insurance policies where an accident occurs in Hawaii.

Specifically, these cases recognize that Hawaii has an "especially strong" interest in having its law applied to insurance policies governing automobile accidents that occur in Hawaii due to the high number of out-of-state drivers.  *Abramson*, 76 F.3d at 305; *Mickelson*, 107 Haw. at 198, 111 P.3d at 607; *see also Lemen*, 938 F. Supp. at 644 (recognizing Hawaii's policy "to protect persons injured within its boundaries").  And as to anti-stacking provisions in particular (such as the one that GEICO seeks to enforce in this action), *Abramson* explains that Hawaii has a strong interest in interpreting them pursuant to Hawaii law to ensure that an insured receives the actual amount of damages available under the policy:

> Applying Hawaii law, it is clear that anti-stacking provisions in personal automobile insurance policies are not permitted to defeat fair compensation for persons injured by underinsured motorists . . . .  (*Allstate Ins. Co. v. Hirose*, 77 Haw. 362, 884 P.2d 1138, 1140-46 (1994) (cases collected)).  Hawaii law recognizes, for reasons of public policy, that an insured be able to receive the amount of actual damage available to him under existing

19

> insurance agreements.  *See Estate of Calibuso v. Pacific
> Ins. Co.*, 62 Haw. 424, 616 P.2d 1357, 1360 (1980)
> (citing *Walton v. State Farm Mut. Auto. Ins. Co.*, 55
> Haw. 326, 518 P.2d 1399, 1402 (1974)).

*Abramson*, 76 F.3d at 305; *see also Taylor v. Gov't Emp. Ins. Co.*, 90 Haw. 302,

307-08, 978 P.2d 740, 745-46 (1999) (explaining that Hawaii's underinsured

motorist statute, HRS § 431:10C-301(b)(4), is intended "to provide protection,

through voluntary insurance, for persons who are injured by underinsured

motorists whose liability policies are inadequate to pay for personal injuries caused

by motor vehicle accidents").

Hawaii's policy in favor of stacking is based on solid ground.  First,

where stacking results in an insured receiving less than his actual damages,

refusing stacking "would award the insurer the windfall, based on the none too

compelling assumption that the uninsured would have only been insured to the

statutory minimum."  *Walton*, 55 Haw. at 332, 518 P.2d at 1403.  In other words,

"[w]hat [an insured] would have received from an uninsured motorist is purely a

matter of speculation" and should not affect a determination of an insured's

benefits.  *Id.* (quotations and citations omitted).  Further, "permitting recovery

under both uninsured motorist coverages (but only until insured is indemnified for

losses) avoids the potentially intricate problems involved in deciding [which

insurance is the primary insurance]."  *Id.*; *see also Abramson*, 76 F.3d at 305 n.1

20

(outlining reasons in favor of stacking as provided in *Walton*).

Hawaii's policy against offset provisions is likewise well-reasoned -- *Abramson* held that a "setoff provision would be against Hawaii's public policy, which requires an insured be allowed to receive up to the amount of actual damage available to him under existing insurance agreements."  83 F.3d at 1174 (citing *Estate of Calibuso*, 62 Haw. at 429, 616 P.2d at 1360).  Further, allowing an offset in this action would result in the Ingalls receiving nothing under their policy, which runs directly contrary to Hawaii's rule that "state statutory provisions . . . must be interpreted as invalidating clauses in insurance policies that, if effectuated, would reduce the benefits directly payable by the injured-insured's insurer to a sum below the statutory minimum."  *Walton*, 55 Haw. at 328-29, 518 P.2d at 1401; *see also Am. Ins. Co. v. Takahashi*, 59 Haw. 59, 64, 575 P.2d 881, 884 (1978) (same).  And finally, as reasoned by *Walton* in favor of stacking, to allow an insured to offset the amount it would otherwise owe under a policy would award the insurer a windfall where other insurance is available and an insured's damages are not fully covered by that insurance.

These Hawaii policies are especially strong in this action given the connection that the facts of the accident have to Hawaii compared to California. *See* Restatement § 187, comment g ("An important consideration [in determining

whether there is a fundamental policy of the state] is the extent to which the

significant contacts are grouped in this state.  For the forum will be more inclined

to defer to the policy of a state which is closely related to the contract and the

parties than to the policy of a state where few contacts are grouped but which,

because of the wide dispersion of contacts among several states, would be the state

of the applicable law if effect were to be denied the choice-of-law provision.").

Chad Ingalls was not merely a short-term visitor to Hawaii at the time of the

January 12, 2009 accident.  Rather, he and his family had just relocated to Hawaii,

a state they had lived in for the majority of seventeen-plus previous years in which

they had been insured by GEICO.  At the time of the accident, Chad Ingalls had a

Hawaii driver's license, was driving a vehicle licensed in Hawaii, and was injured

by a Hawaii resident.  And finally, although not dispositive on its own, the court

recognizes that the California policy was an adhesion contract, and there is no

evidence that any of the differences between the various state laws were explained

to Chad Ingalls to allow him to make an informed decision about coverage.  *See*

*Mickelson*, 107 Haw. at 199, 111 P.3d at 608 (weighing in favor of Hawaii law the

"adhesionary nature of the Policy and the Policy's applicability throughout the

United States'); *Abramson*, 76 F.3d at 305 (applying Hawaii law to New Jersey

policy where there was a "lack of any negotiation over the terms of the contract

and the parties' expectations that the contract would cover the insured as he

travelled throughout the United States and Canada").  As a result, all of these facts

further strengthen the court's determination that application of California law

would be contrary to a fundamental policy of Hawaii.

       In opposition, GEICO argues that Hawaii's interest is limited to

ensuring that Chad Ingalls receives the amount of coverage available to him under

his existing insurance contract.  In support of this argument, GEICO argues that the

California policy prohibited stacking, and Hawaii has no interest in having Chad

Ingalls receive insurance coverage that he did not pay to receive.  *See* Doc. No. 89,

GEICO Mot. at 11-13.  The court rejects this argument -- Hawaii's interest is not

limited to blindly applying California law where the accident occurred in Hawaii.

Rather, Chad Ingalls is a Hawaii citizen who was injured in Hawaii, and California

law is directly contrary to that of Hawaii.

       In further opposition, GEICO argues that Hawaii law prohibits

stacking of UIM coverage.  Specifically, GEICO cites to HRS § 431:10C-301(c),

which provides that "[t]he stacking or aggregating of uninsured motorist coverage

or underinsured motorist coverage is prohibited, except as provided in subsection

(d)."  *See* Doc. No. 89, GEICO Mot. at 13-14.  GEICO does not, however, provide

the language in HRS § 431:10C-301(d), which provides that an insurer must offer

the insured the opportunity to stack UM and UIM coverage at the time insurance is

first issued.[11]   The Hawaii Supreme Court explains that this "language and the

legislative history of the UIM statute does not reveal an express intent by the

legislature to require, or ban, stacking of UIM benefits."   *Hirose*, 77 Haw. at 364,

884 P.2d at 1140.   Rather, the Hawaii "legislature explicitly left the issue of

stacking to the judiciary, stating: 'Judicial decisions on stacking of benefits are not

affected by this bill, and it is your Committee's intent to leave the issue of stacking

to judicial determination.'"   *Id.* at 364-65, 884 P.2d at 1140-41 (quoting Haw. Sen.

Conf. Comm. Rep. No. 215, in 1988 Senate Journal, at 675); *see also Abramson*,

76 F.3d at 306 (explaining that the Hawaii "legislature explicitly left the issue of

---

[11]  In full, HRS § 431:10C-301(d) provides:
> An insurer shall offer the insured the opportunity to purchase uninsured motorist coverage and underinsured motorist coverage by offering the following options with each motor vehicle insurance policy:
>
> (1)   The option to stack uninsured motorist coverage and underinsured motorist coverage; and
>
> (2)   The option to select uninsured motorist coverage and underinsured motorist coverage, whichever is applicable, up to but not greater than the bodily injury liability coverage limits in the insured's policy.
>
> These offers are to be made when a motor vehicle insurance policy is first applied for or issued. For any existing policies, an insurer shall offer such coverage at the first renewal after January 1, 1993. Once an insured has been provided the opportunity to purchase or reject the coverages in writing under the options, no further offer is required to be included with any renewal or replacement policy issued to the insured.

stacking to the judiciary"). And as explained above, Hawaii courts have articulated a strong policy in favor of stacking, and have consistently allowed stacking where an individual is injured in Hawaii and seeks to collect under an out-of-state policy.

Finally, at the October 15, 2012 hearing, GEICO argued that Hawaii has no interest beyond ensuring that the Ingalls receive the minimum insurance coverage required by Hawaii law. As an initial matter, this argument appears to be factually inaccurate -- if GEICO prevails in this action, the Ingalls will not receive the minimum insurance required by Hawaii law, but instead will not receive anything. And in any event, GEICO bases this argument on a false premise -- the issue is not whether Hawaii has a fundamental policy to ensure that insured receive minimum insurance coverage, but rather whether Hawaii has a fundamental policy to prevent anti-stacking and offsets under these circumstances. And as explained above, Hawaii has articulated such a policy.

In sum, the court finds that application of California law to the insurance policy would be contrary to the fundamental policy of Hawaii to ensure that insureds receive the actual amount of benefits provided under their insurance policy.

**2.      *Whether Hawaii Has a Materially Greater Interest than California in Determining Insurance Coverage***

For the final step, the court must determine whether Hawaii has a materially greater interest than California in having its laws applied in interpreting the policy.

Compared to California, Hawaii has a much greater interest in having its law applied in determining coverage for the January 12, 2009 accident.  As described above, the Hawaii Supreme Court, the District of Hawaii, and the Ninth Circuit have all articulated that Hawaii has a strong interest in seeing its law applied to in-state accidents covered by out-of-state insurance policies because Hawaii has a high number of non-resident drivers in the state, and has a strong interest in protecting the rights of persons injured within its boundaries.  *See Mikelson*, 107 Haw. at 199-200, 111 P.3d at 608-09; *Abramson*, 76 F.3d at 305; *Lemen*, 938 F. Supp. at 643-44.  And in recognizing these strong interests, each of these courts has determined that Hawaii law should apply in interpreting out-of-state policies where the accident occurs in Hawaii.  *See Mikelson*, 107 Haw. at 199-200, 111 P.3d at 608-09 (applying Hawaii law to California policy where insured was injured in Hawaii while attending University of Hawaii); *see also Abramson*, 76 F.3d at 305 (applying Hawaii law to New Jersey policy where accident occurred in Hawaii and there was a "lack of any negotiation over the terms of the contract

26

and the parties' expectations that the contract would cover the insured as he travelled throughout the United States and Canada"); *Lemen*, 938 F. Supp. at 643-44 (determining that Hawaii law applied to Alaska insurance policy because the accident occurred in Hawaii, the injured was attending University of Hawaii, and Hawaii "has [] a strong interest in protecting the rights of persons within the state to recover benefits pursuant to automobile insurance policies").

The facts of this action establish Hawaii's strong interest in seeing its laws applied -- not only did the accident occur in Hawaii, but Plaintiff was a Hawaii resident at the time of the accident and he had previously notified GEICO that he was moving to Hawaii.  In comparison, the only tie to California is that the Ingalls renewed their policy with GEICO when they were living in California, which resulted in the insertion of the governing law provision.  Considering all the facts, the court finds that Hawaii has a materially stronger interest in seeing its law applied to the policy.

In sum, the court finds that although the policy's inclusion of the California governing law provision was reasonable, application of California law would violate Hawaii's fundamental policy of ensuring that insureds receive coverage under their policies and that Hawaii has a materially greater interest in having its law applied to this dispute.  As a result, the court finds that Hawaii law

27

applies to the California policy.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS the Ingalls' Second Motion for Summary Judgment, Doc. No. 89, and DENIES GEICO's Motion for Partial Summary Judgment, Doc. No. 90.  In particular, the court finds that if the California policy applies to the parties' dispute, then it shall be interpreted pursuant to Hawaii law to allow stacking of UM/UIM motorist coverage and that GEICO may not offset coverage by the amount Chad Ingalls received from Song.  As the parties represented at the October 15, 2012 hearing, the court's grant of summary judgment resolves the issues before the court such that judgment shall issue in favor of the Ingalls.  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 18, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Ingalls v. Gov't Employees Ins. Co.*, Civ. No. 11-00244 JMS/RLP, Civ. No. 11-00488 JMS/KSC, Order (1) Granting Chad Ingalls' and Pearl Ingalls' Second Motion for Summary Judgment, Doc. No. 86; and (2) Denying Government Employees Insurance Company's Motion for Partial Summary Judgment, Doc. No. 90